227 Ga. 727 (1971)
182 S.E.2d 793
GEORGIA PUBLIC SERVICE COMMISSION et al.
v.
GENERAL TELEPHONE COMPANY OF THE SOUTHEAST. GEORGIA PUBLIC SERVICE COMMISSION et al.
v.
GENERAL TELEPHONE COMPANY OF GEORGIA. GEORGIA PUBLIC SERVICE COMMISSION et al.
v.
MUTUAL TELEPHONE COMPANY, INC.
26430, 26431, 26432.
Supreme Court of Georgia.
Argued April 14, 1971.
Decided May 20, 1971.
Rehearing Denied June 17, 1971.
Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Robert J. Castellani, John W. Hinchey, Assistant Attorneys General, for appellants.
Trotter & Duncan, Thurman E. Duncan, William P. Trotter, Power, Jones, Bell & Schneider, John Robert Jones, William R. White, Ward W. Wueste, Jr., for appellees.
UNDERCOFLER, Justice.
The Georgia Public Service Commission appeals from an interlocutory order of the superior court which enjoins as confiscatory the rates authorized for appellees.
Appellant contends "That the trial court erred in finding confiscation based on new, updated financial data which had never been presented to the Commission by rehearing or otherwise" and therefore the appellees "have failed to exhaust their administrative remedies."
The evidence shows: In March, 1969, appellees applied to the Georgia Public Service Commission for rate increases. Hearings were held in May and June, 1969. On June 18, 1970, rate increases less than those requested were authorized. Appellees filed for rehearing on July 6, 1970. They were denied on July 17, 1970. Thereafter, these actions to enjoin the rates were instituted in the superior court on August 11, 1970. The evidence received by the Georgia Public Service Commission was limited to a test year ending December 31, 1968. The trial court received and considered evidence not only for the test year but subsequent thereto and up to May 31, 1970, as presented by appellees. Held:
Equity courts refuse jurisdiction where an adequate administrative remedy is available and has not been exhausted. The Georgia *728 Public Service Commission was created for a special purpose with special competence to deal with special matters including the establishment of rates for public utilities. The courts presuppose it will provide a proper adjudication of such matters. When its administrative procedures have been followed and a final rate order is entered, as here, for which no appeal is provided, we must conclude such administrative remedies are exhausted. Thereafter, a court of equity will take jurisdiction to determine the constitutional question of confiscation. "Fundamental constitutional rights ... should receive the full protection of prompt judicial action to prevent the injury... If the evidence shows that the rates ordered will result in confiscation, a court of equity has jurisdiction to render the judgment here complained of. Rates that are unjustly or unreasonably low are confiscatory." Southern Bell Telephone &c. Co. v. Ga. Public Service Comm., 203 Ga. 832, 871, 872 (49 SE2d 38).
The instant cases filed in the superior court are de novo proceedings. Ga. Power Co. v. Ga. Public Service Comm., 211 Ga. 223, 229 (85 SE2d 14). They raise the constitutional question of confiscation. In passing upon this issue the trial court is authorized to consider all evidence bearing on the question. City of Atlanta v. Atlanta Gas Light Co., 149 Ga. 405 (100 SE 439); City of Atlanta v. Ga. R. &c. Co., 149 Ga. 411, 417 (100 SE 442). See 4 Davis, Administrative Law 163, § 29.09.
There is no merit in appellant's contention.
Judgment affirmed. All the Justices concur, except Felton, J., who dissents.
FELTON, Justice, dissenting.
In a proceeding on the application of appellees for a raise in rates the Georgia Public Service Commission *729 received evidence from a "test year" ending on December 31, 1968. The appellees filed motions for rehearing of adverse judgments or findings by the commission which did not include a request for the consideration of data, facts and information from the end of the test year up to May 31, 1970. This court does not know the cause of the delay in the final orders of the commission and there is no presumption as to why the delay was so long. We are dealing with the powers of a court of equity and are not restricted to niceties of procedure or technicalities thereof. The complaint in equity was in effect a de novo hearing of the questions decided by the commission to wit, that the rates requested, on the basis of a twelve-month trial period, were not confiscatory. I think that it would have been proper for the superior court to remand the case to the commission with directions to decide the cases on the evidence originally considered by the commission and the additional evidence heard by the superior court and render findings accordingly. It is true that courts presume, prima facie, that the commission will provide a proper adjudication of the matters which may come before it, but the presumption is not conclusive that administrative procedures have been exhausted, especially when the record shows that they have not. To follow the reasoning in this case would require this court to tear out of the books, so to speak, the cases refusing to consider equity cases where administrative remedies had not been exhausted. Where a hearing such as the one in this case is attacked in court, there is only a limited de novo reconsideration in equity and that is a hearing of the case as it stood in the commission  the determination of rates based on the trial year period and no more. As stated by the majority opinion, the commission was created for a special purpose with a special competence to deal with special matters, including the establishment of rates for public utilities. In the circumstances of the case we are thwarting that purpose by binding the commission in the hearing on an application for a raise in rates, by evidence it has never heard. It is not the same as a case where the commission undertakes to fix a rate on its own motion, even without a hearing.
I do not understand the cases in 149 Georgia Reports, cited by the majority, to hold what the majority holds in this case that *730 they mean. In the circumstances of this case I think that the companies, after a long delay entailed in reaching judgments, should have requested the commission's permission for them to present to it the evidence they carried to the court of equity. In the absence of such, I think the cases should be remanded to the commission to consider under all of the applicable facts necessary for a decision. The law never intended for such cases as this to get to a court of equity until the commission has had a full opportunity to hear the facts, or to refuse to do so on motion.