## 30081. STATESBORO TELEPHONE COMPANY v. GEORGIA PUBLIC SERVICE COMMISSION et al.

HILL, Justice.

The Georgia Public Service Commission granted a certificate of public convenience and necessity to Bulloch County Rural Telephone Cooperative ("Bulloch") which competes with a prior certificate held by Statesboro Telephone Company ("Statesboro"). Statesboro filed suit in Fulton Superior Court for injunction, which was denied when Bulloch's motion for summary judgment was granted and Statesboro's motion for summary judgment was denied.

The primary issues in this case relate to the right of the holder of a certificate of public convenience and necessity to be protected against the grant of a competing certificate. Several telephone companies have filed briefs, amici curiae, supporting Statesboro's position.

Prior to the commencement of these proceedings before the Public Service Commission, Statesboro held a certificate to provide local telephone service in and adjacent to the City of Statesboro. Bulloch held certificates to provide local service in the towns of Portal, Clito, Brooklet and Nevils in Bulloch County around the City of Statesboro. However, Statesboro held a certificate to provide toll (long distance) service to its exchanges and to Portal, Clito and Brooklet. In fact, Statesboro had provided toll service to Nevils since 1956 although not certificated to do so.

Bulloch filed an application with the commission for a certificate to provide toll service to Portal, Clito, Brooklet, Nevils and its new exchange, Anderson, along a semicircular route north, east and south of the City of Statesboro. Statesboro was notified of this application which was partially based upon inadequacy of toll service being provided by Statesboro. A hearing on Bulloch's application was held before the commission on September 23, 1973, at which Statesboro appeared.

Statesboro filed an application for a toll certificate to serve Nevils and Anderson. The applications of Bulloch and Statesboro were consolidated and a second hearing was held on November 28, 1973, at which Statesboro

offered no additional evidence.

The evidence before the commission showed that equipment Statesboro admitted needing in 1970 had not been fully installed in 1974, that much of Statesboro's installed equipment was either out of service, overloaded, substandard, obsolete or experiencing loss of transmission or noise interference, and generally that toll service furnished by Statesboro was inadequate. It would serve no useful purpose to detail those deficiencies in this opinion.

The commission denied Statesboro's application to serve Nevils and Anderson and granted Bulloch's application to provide toll service to its local service subscribers. Statesboro's existing toll certificate was left in effect, except that Bulloch thereafter would route toll calls from its exchanges over its toll lines. A drawing of Statesboro's toll certificate would resemble the spokes of a wheel with the City of Statesboro at the hub; a drawing of Bulloch's toll certificate would resemble a three-quarter rim of that wheel.

Statesboro filed suit to enjoin the commission from enforcing its two orders and Bulloch intervened as a defendant.[1] The certificate holders each moved for summary judgment. No evidence not before the commission was offered in support of or in opposition to these motions. Following a hearing at which the commission's record was put in evidence, Bulloch's motion was granted and Statesboro's was denied. Statesboro appeals.

Statesboro enumerates the trial court's order granting Bulloch's motion for summary judgment as error in that (1) it denied Statesboro its right to present evidence upon the issue of whether the commission's orders were arbitrary, capricious, unreasonable and confiscatory; (2) there were genuine issues of material fact as to whether the commission's orders were arbitrary, capricious, unreasonable and confiscatory; (3) the trial

_____

[1] By Ga. L. 1975, p. 404, the Public Service Commission has been placed under the Administrative Procedure Act effective January 1, 1976.

court's order was erroneous in finding that the commission's orders were not arbitrary, capricious, unreasonable or confiscatory; and (4) that order deprived Statesboro of its property without due process of law in violation of the State and Federal Constitutions.

1. In *Ga. Public Service Commn. v. General Tel. Co.,* 227 Ga. 727 (182 SE2d 793), a utility regulated by the Public Service Commission filed suit to enjoin rates set by the commission in 1970 based on hearings held in 1969 using 1968 as a test year, contending that such rates were confiscatory. The trial court considered evidence not only for the test year but also subsequent thereto up to the date of the commission's rate order in determining the question of confiscation. On appeal the commission contended that the utility had failed to exhaust its administrative remedies. It was held that the commission is not permitted to defend such a suit on the ground of failure to exhaust administrative remedies where the commission had entered a final rate order and the utility's motion for rehearing had been denied.

It should be noted that in the *General Telephone* case, the evidence considered by the commission in fixing rates was limited to the test year ending December 31, 1968, and that its decision was rendered in June 1970. The *General Telephone* case does not stand for the proposition that every order of the Public Service Commission granting or denying a certificate of public convenience and necessity is subject to a complete trial de novo in the superior court. For example, a utility opposing the grant of a competing certificate should not withhold evidence from the commission expecting to introduce it in court where it will not be subject to examination and consideration by the commission and its staff. Withholding such evidence from the commission would amount to a failure to exhaust administrative remedies.

Moreover, *General Telephone* does not exempt suits against the commission from the summary judgment procedures of Code Ann. § 81A-156 (c), which provides that the party opposing the motion shall serve opposing affidavits and if there is no genuine issue as to any material fact, judgment shall be rendered without trial by jury.

The trial court did not deny Statesboro its right to present evidence (affidavits) showing the existence of genuine issues of material fact.

Although the transcript of the hearings before the commission showed issues of fact, those issues were resolved adversely to Statesboro by the commission. When those transcripts were before the trial court on motion for summary judgment, the question was not whether the transcripts showed issues of fact requiring a trial, but was whether the evidence before the trial court showed that the commission's orders were valid or invalid.

As stated in *Ga. Public Service Commn. v. Ga. Power Co.,* 182 Ga. 706, 715 (186 SE 839): "The courts should not interfere with a valid order of the Public Service Commission unless it be clearly shown that the order is unreasonable, arbitrary, or confiscatory. . . If the evidence clearly showed that the requirement of the commission was unreasonable, capricious, or confiscatory, the court would be bound to set such finding aside as unlawful in the taking of property without due process of law. Otherwise the court has no such authority."

We therefore turn to consideration of Statesboro's statutory and constitutional rights to determine whether the commission's orders were valid.

2. Statesboro contends that the commission lacks authority to grant a competing certificate unless the commission determines that the existing certificate holder is providing inadequate service and is unable or refuses, after notice and hearing, to provide reasonably adequate service.

Statesboro obtained its toll certificate pursuant to the "grandfather" provisions of Ga. L. 1950, p. 311, 313, Sec. 5 (Code Ann. § 93-328). This Act has not heretofore been interpreted by appellate decision.

The 1950 Act provides that the commission shall not grant a telephone certificate without notice to any telephone company or co-operative "occupying the territory affected." Ga. L. 1950, pp. 311, 312, 314, Secs. 3, 8 (Code §§ 93-326, 93-330). That is to say, the 1950 Act by which Statesboro obtained its toll certificate contemplates the issuance of competing certificates (Ga. L.

1950, pp. 311, 312, Sec. 4 (Code Ann. § 93-327)). See also Ga. L. 1950, pp. 311, 312, Sec. 2 (Code Ann. § 93-325).

Statesboro contends that the opportunity afforded by statute to motor carriers to remedy inadequate service before a competing motor carrier certificate is granted (Ga. L. 1931, pp. 199, 201, as amended by Ga. L. 1950, pp. 186, 187; Code Ann. § 68-609), and the opportunity which was afforded by statute to radio common carriers and telephone and telegraph companies to remedy inadequate service before a competing radio common carrier certificate was granted (Ga. L. 1970, p. 104, Sec. 2 (4e). See Code Ann. § 93-902 (e) as it existed prior to amendment by Ga. L. 1972, p. 439), should be viewed as expressing the intent of the General Assembly that no competing certificate of public convenience and necessity should be granted until the existing certificate holder has been afforded an opportunity to remedy any inadequacy in service.

We decline to read the statutory protective provisions available to motor carriers, and formerly available regarding the issuance of radio common carrier certificates, into the Telephone Systems Act of 1950 for two reasons: first on the basis of interpretation of legislative intent, and second on the basis of the public policy underlying that legislative intent.

The 1950 Telephone Systems Act (Ga. L. 1950, pp. 311-314; Code Ann. §§ 93-324 through 93-331) does not expressly provide the protection requested (as seen above). The 1931 Motor Common Carriers Act (Ga. L. 1931, p. 199), was found to authorize the grant of competing motor carrier certificates in *Coleman v. Drake,* 183 Ga. 682 (188 SE 897). In 1950, the General Assembly amended the Motor Common Carriers Act of 1931 to provide that a competing motor carrier certificate could not be granted until after the existing certificate holder had had an opportunity to improve service. Ga. L. 1950, pp. 186, 187. See Code Ann. § 68-610 as amended.

At that same 1950 session, the General Assembly enacted the Telephone Systems Act, supra. The General Assembly did not provide telephone utilities the protection then being given motor carriers in 1950, nor has it done so since that time.

The Radio Common Carrier Act as enacted in 1970 provided telephone and telegraph companies the protection requested as against competing radio common carriers (Ga. L. 1970, p. 104, Sec. 2 (4e)), but the superseding 1972 Radio Utility Act (Ga. L. 1972, p. 439) repealed that protection as to telephone and telegraph companies (see Code Ann. § 93-911).

If the rule were, as Statesboro contends it should be, that the commission lacks authority to grant a competing telephone certificate unless the commission determines that the existing certificate holder is providing inadequate service and is unable or refuses, after notice and hearing as to inadequacy of service, to provide reasonably adequate service, then a certificate holder could render inadequate telephone service to the public with the assurance that it would be given an opportunity to improve service before a competing certificate could be issued. Such assurance could act as a deterrent to the filing of a competing application. These two factors could work contrary to the best interests of telephone users.

Although the General Assembly could decide that the public interest favors stability in the telephone industry, as it has regarding motor common carriers and radio utilities, thus far the General Assembly has not seen fit to enact similar provisions applicable to telephone companies.

We therefore decline to read into the 1950 telephone utilities Act the requirement that an existing telephone certificate holder rendering inadequate service to the public be afforded an opportunity to improve service before a competing telephone certificate can be granted by the Public Service Commission.

On the other hand, a competing telephone certificate, like a noncompeting telephone certificate, can only be issued upon showing that public convenience and necessity so require (Code Ann. §§ 93-324, 93-327), and it would appear that the public convenience and necessity would not authorize the issuance of a competing certificate so long as the existing certificate holder renders adequate service.

Therefore, it is unnecessary to read into the 1950 Telephone Systems Act the motor carrier requirements of

Code Ann. § 68-609 (as amended in 1950) that no competing certificate shall be granted when the existing certificate holder is adequately serving the public, and no competing certificate shall be granted unless and until it is proved that the existing certificate holder is rendering inadequate service, for the reason that such requirements are presently inherent in the public convenience and necessity provisions of the 1950 Act. See Re Citizens Telephone Company, Inc., Georgia Public Service Commission Docket No. 1852-U, 57 P.U.R. 3d 81, 86, where the commission recognized these requirements.

Regardless of such recognition by the commission, an existing certificate holder is entitled to notice of the filing of a competing application (Code Ann. § 93-326) and would at the hearing on that application be permitted to show the adequacy of its existing service or its ability and willingness to improve service. See *Tamiami Trail Tours v. Ga. Public Service Commn.,* 213 Ga. 418 (3) (99 SE2d 225).

Because Statesboro did not show that its existing toll service was adequate nor that it was willing and able to render adequate toll service, the commission did not violate the statute when it granted a competing certificate to Bulloch, and the trial court therefore did not err in granting Bulloch's motion for summary judgment.

This conclusion is subject to consideration of the constitutional attacks made by Statesboro, which are examined below.

3. Statesboro argues that if the protection it seeks by statutory interpretation is not available, then due process requires that such protection be afforded existing certificate holders. Clearly, Statesboro is entitled to insist upon its due process rights. Equally as clearly, however, no property of Statesboro's was taken when its application to serve Nevils and Anderson was denied. It had never served Anderson and its 19 years of toll service to Nevils was not authorized by a certificate issued for that purpose. Code Ann. § 93-324.

Regarding Statesboro's existing toll certificate to serve the City of Statesboro, Portal, Clito and Brooklet, that certificate remains in effect and Statesboro will continue to provide toll service to its own local service

subscribers. Statesboro did not show before the commission that its toll service to its subscribers would be operated at a loss or that it would not receive a fair return on its investment, or that it would be unable to meet its financial or service obligations.[2] Moreover, its toll certificate was granted subject to the prospect of competition existing in the 1950 telephone utilities Act. It thus had no property right guaranteeing it against competition. Pearsall v. Great Northern R., 161 U. S. 646, 664 (16 SC 705, 40 LE 838); Tennessee Electric Power Co. v. TVA, 306 U. S. 118, 139 (59 SC 366, 83 LE 543).

Statesboro contends that as a matter of due process, it should have been advised of what charges of inadequacy of service lay against it and afforded an opportunity to defend against those charges. This contention, although appealing, is not well founded upon the facts and record of this case, for the reason that the hearing held by the commission on September 23, 1973, dealt extensively with the inadequacies of Statesboro's toll service, and at the hearing on November 28, 1973, Statesboro offered no evidence.

Statesboro contends that the trial court failed to make an independent determination as to the issue of confiscation of property. In a rate case, the evidence pertinent to the application for a rate increase, and hence evidence bearing on the question of confiscation, would almost invariably be a matter of record. In this certificate case, however, Statesboro's president testified before the

---

[2]Without evidence as to these matters, the commission's admission that the certificate granted to Bulloch would have the effect of rendering Statesboro's certificate (to provide toll service to Portal, Clito, Brooklet and Nevils) "valueless," does not show a per se deprivation of property. Paraphrasing *Ga. Public Service Commn. v. Ga. Power Co.,* 182 Ga. 706, supra, p. 715, this public service company enjoys profits by reason of certificates granted by the state, and it will not be heard to complain because of the possibility of an unspecified "loss" incurred in providing adequate telephone service to the public.

commission that its records would not show the original cost, investment in or value of the equipment and lines put out of use by the grant of Bulloch's application. He acknowledged that the facilities could be appraised. However, no such appraisal was introduced for consideration by the commission. Under these circumstances, it was not possible for the trial court to make the independent determination now sought by Statesboro, and it was not incumbent upon the trial court to enjoin the commission until Statesboro produced evidence before the commission bearing on the issue of confiscation. As in a rate case, the burden is on the utility to show confiscation, and it would have been error for the court below to presume confiscation.

We recognize that Statesboro contends here that it should have been allowed to introduce evidence in the trial court on the issue of confiscation, and on its willingness to improve its service. As heretofore noted, evidence on those issues should have been submitted by Statesboro to the commission, and if excluded by the commission then to the trial court in connection with the motions for summary judgment. Such evidence was not produced.

Statesboro contends that it was denied due process of law because the commission did not enter findings of fact and conclusions of law. The orders entered by the commission granting Bulloch's application and denying Statesboro's, contain recitals of facts showing the existing inadequacy of service rendered by Statesboro and that the public convenience and necessity would be served by the certificate granted to Bulloch. More complete findings are not required. See *Coleman v. Drake,* 183 Ga. 682, 686 (188 SE 897).[3] Moreover, like the trial court, the commission had no evidence offered by Statesboro as to the investment in or value of the equipment and lines put out of use by the grant of Bulloch's application; i.e., it had no evidence

---

[3]Under the Administrative Procedure Act, findings of fact and conclusions of law by the commission may be required, unless waived. Ga. L. 1975, pp. 404, 408-409. See footnote 1 above.

necessarily showing wasteful duplication.

The Public Service Commission found, after hearing the evidence, that the public convenience and necessity would be served by the grant of a certificate to Bulloch County Rural Telegraph Cooperative to provide toll service to its local service subscribers. Upon review of the facts of this case shown by the record, it is our judgment that the action of the commission was not arbitrary, capricious or confiscatory and that the trial court did not err.

*Judgment affirmed. All the Justices concur.*

ARGUED JULY 9, 1975 — DECIDED SEPTEMBER 16, 1975.

*Barwick, Bentley & Binford, M. Cook Barwick, Robert W. Hayes, James L. Ford,* for appellant.

*Lefkoff & Hanes, Robert J. Castellani, Paul L. Hanes, Francis W. Allen, Arthur K. Bolton, Attorney General, Timothy J. Sweeney, Staff Assistant Attorney General,* for appellees.

*Long & Aldridge, Clay C. Long,* amicus curiae.

*Powell, Goldstein, Frazer & Murphy, J. Winston Huff, Daryll Love,* amicus curiae.

*Alston, Miller & Gaines, L. Neil Williams, Jr., John K. Train, III, William Rothschild,* amicus curiae.