**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**December 4, 2025**

# In the Court of Appeals of Georgia

A25A1538. FUSCO v. SEXUAL OFFENDER RISK REVIEW
BOARD.

PADGETT, Judge.

Daniel Fusco appeals from the superior court's order dismissing his petition for judicial review for failure to serve the Sexual Offender Risk Review Board (the "Board"). For the reasons that follow, we reverse.

We review the superior court's ruling on a motion to dismiss for insufficient service for an abuse of discretion. *Dessalines v. Dep't of Human Services*, 356 Ga. App. 826, 827 (849 SE2d 673) (2020). However, when an appeal from such a ruling presents a question of law, we review the lower court's decision de novo. Id.

In 2023, the Board notified Fusco that in accordance with OCGA § 42-1-14,[1] it had assigned him the highest risk assessment classification of "sexually dangerous predator."[2] Fusco petitioned the Board, pursuant to OCGA § 42-1-14(b), to re-evaluate his risk assessment classification and assign him Level II status. In support of his request, he submitted documentation demonstrating that since his release, he had no parole issues or revocations, had passed eight polygraph examinations as part of his ongoing treatment and condition of parole, had maintained stable employment, and had the written support of his parole officer, his employer, and his church deacon who was a former police officer and public safety official for over 40 years. In

---

[1] OCGA § 42-1-14(a) requires that the Board determine the likelihood that a sexual offender convicted in Georgia or moving to Georgia from another state, territory, or place will commit another dangerous sexual offense or a crime against a minor. To that end, the Board conducts a risk assessment, classifying a sexual offender as either Level I, Level II, or as a "sexually dangerous predator." See also OCGA § 42-1-12(a)(12), (13), and (21) (defining risk assessment classification levels).

[2] In 1985, Fusco pleaded guilty and was convicted of one count of child molestation. He again pleaded guilty and was convicted in 1987 of aggravated child molestation, child molestation, sexual exploitation of children, enticing a child for indecent purposes, and related counts, involving eight victims between the ages of eight and fourteen. He was sentenced to an aggregate of 160 years in prison and served nearly 30 years, before being released on parole in 2017.

response, the Board notified Fusco that it affirmed its original risk assessment classification.

Fusco then filed a petition for judicial review of the Board's classification decision in the Superior Court of Fulton County on March 11, 2024, in accordance with OCGA § 42-1-14(c).[3] When the Board failed to submit the required summary of its findings to the superior court within the time prescribed by OCGA § 42-1-14(c), the court entered an order on May 2, 2024, directing the Board to submit such summary within 30 days. On June 26, 2024, the Board entered a special appearance and moved to dismiss Fusco's petition, arguing that because Fusco used regular United States mail to serve the Board with a copy of his petition, he failed to effect service in compliance with OCGA § 9-11-4(d) or (e), requiring personal service or waiver of service, and that therefore, the petition was untimely. The superior court

---

[3] Among other things, OCGA § 42-1-14(c) provides that the petition for judicial review "shall name the [B]oard as defendant," "be filed in the superior court of the county in which the offices of the [B]oard are located[,]" and that "[w]ithin 30 days after service of the appeal on the [B]oard, the [B]oard shall submit a summary of its findings to the court[.]" After the submission of relevant evidence, the court "shall hold a hearing to determine the issue of classification[,]" and "may uphold the classification . . . or, if the court finds by a preponderance of the evidence that the sexual offender is not placed in the appropriate classification level, the court shall place the sexual offender in the appropriate classification level." Id.

granted the Board's motion, finding that Fusco had failed to properly serve the Board and that as a result, it lacked jurisdiction. We granted Fusco's application for discretionary review, and this appeal followed.

On appeal, Fusco contends the superior court erred in holding that service by mail of his petition for judicial review was insufficient. Specifically, he maintains that under either the Administrative Procedure Act, OCGA § 50-13-1 et seq. ("APA"), or the Superior and State Court Appellate Practice Act, OCGA § 5-3-1 et seq. ("SSCAPA"), service of his petition by regular United States mail was sufficient. We agree service by United States mail was sufficient under the statutes applicable here.

As a preliminary matter, because the process by which the Board determines risk assessment classifications under OCGA § 42-1-14(a) and (b) does not provide an opportunity for hearing at the Board or agency level, matters determined under these subsections do not fall within the ambit of the APA. See OCGA §§ 50-13-2(2), 50-13-13, and 50-13-19 (explaining that the APA applies to "contested cases" where the aggrieved party is provided an opportunity for hearing before the administrative body, describing the manner of hearing the parties must be afforded at the administrative level, and providing for judicial review of contested cases). Rather, the procedures not

4

otherwise set forth in OCGA § 42-1-14(c) that govern judicial review of Board determinations under subsection (b) are provided for in the SSCAPA.[4]

By its plain language, the SSCAPA expressly provides that service of a petition for judicial review "shall be made in person, by mail, or electronically if consent to electronic service is given[.]" OCGA § 5-3-10(a)(2). Thus, the SSCAPA squarely establishes service by mail as one of three permissible methods of serving a petition for judicial review, and we may not add to or revise the unambiguous language approved by our legislative and executive branches. See, e.g., *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) ("When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant" (citation and punctuation omitted)).[5] As a result, Fusco's service by United

_____

[4] The SSCAPA, which became effective July 1, 2023, was enacted to create a "single, modern, and uniform" procedure governing petitions for review that appeal decisions to superior or state court from a lower judicatory. OCGA § 5-3-2(b)(1). The SSCAPA broadly defines "lower judicatory" to include any official, board, or similar body "exercising judicial or quasi-judicial powers authorized by law." OCGA § 5-3-3(5) and (6).

[5] We are cognizant that during the most recent legislative session, House Bill 688 sought to amend OCGA § 5-3-10(a) to require that service by mail be made by "certified mail or statutory overnight delivery, return receipt requested . . . ." See HB 688, 158th General Assembly (2025). However, unless and until HB 688 is enacted, we are required to interpret the service provision of OCGA § 5-3-10(a) (and OCGA

States mail of his petition for judicial review on the Board was sufficient, and the superior court erred in dismissing his petition.[6]

Even assuming the judicial review process within OCGA § 42-1-14(c) comprised its own, stand-alone appellate procedure, independent of both the APA and the SSCAPA, our case law interpreting the service provision of the APA is highly instructive in interpreting the substantively identical service provision of OCGA § 42-1-14(c), and leads us to the same conclusion that, as enacted, service by United States mail is sufficient under OCGA § 42-1-14(c). Compare OCGA § 50-13-19(b) (describing the petition for judicial review as an "appeal" and providing that "the

§ 42-1-14(c)) as they are written and conclude that "service by mail" includes service by regular United States mail.

[6] We find no merit in the Board's contention that the superior court dismissed the petition on the additional, independent basis of failure to prosecute, as that purported basis for dismissal arose from the court's erroneous ruling that service had not been made on the Board. And in dismissing the petition, the superior court relied exclusively on OCGA § 9-11-12(b)(2) and case law relating to lack of jurisdiction due to failure to make service of process; the superior court made no reference or citation to authority related to dismissal for failure to prosecute. See also OCGA § 5-3-2(b)(2) and (c)(1) (outlining the legislature's intent to "[i]ncrease access to justice through greater resolution of appeals" to superior courts by way of petitions for review "on the basis of substantive issues rather than on complex procedural grounds" and requiring that courts construe the provisions of the SSCAPA "broadly so as to render decisions based on the merits of each case and avoid dismissal of any case . . . unless such dismissal . . . is expressly required by statute").

petition shall be served upon the agency and all parties of record," without prescribing any method of service), with OCGA § 42-1-14(c) (referring to the petition for judicial review as an "appeal" and providing for "service of the appeal on the [B]oard," without specifying any required method of service). See *Dessalines*, 356 Ga. App. at 829 (1) ("The APA does not address the method of service, but . . . when construing OCGA § 50-13-19(b), we have held that service by mail . . . is sufficient[.]") (citation and punctuation omitted)). See also *Ga. Pub. Serv. Comm'n v. Southern Bell*, 254 Ga. 244, 246 (327 SE2d 726) (1985) ("A review under OCGA § 50-13-19 by the superior court is appellate in nature and is not a pretrial, trial, or post trial procedure[,]" and therefore, the provisions of the Civil Practice Act are not applicable to such a review (citation and punctuation omitted)).

Accordingly, we hold that under both the SSCAPA and this Court's decision in *Dessalines*, service by United States mail on the Board was sufficient, and that the superior court erred in ruling otherwise.

*Judgment reversed. Doyle, P. J., and Markle, J., concur.*

7